UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DWAYNE ADAM RACINE | CIVIL ACTION |
| VERSUS | NO. 20-2930 |
| LASALLE MANAGEMENT, ET AL. | SECTION "A" (2) |

## REPORT AND RECOMMENDATIONS

Plaintiff Dwayne Adam Racine filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendants LaSalle Management Company, Catahoula Correctional Center, Terrebonne Parish Criminal Justice Complex ("TPCJC") and the Terrebonne Parish Medical Staff.  ECF Nos. 1, 4.  Defendants TPCJC and Terrebonne Parish Medical Staff filed a Motion to Dismiss for Failure to State a Claim.  ECF No. 22.

These matters were referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to Local Rule 73.2(A) and 28 U.S.C. § 636(b)(1)(B) and (C), including statutory frivolousness review under 28 U.S.C. § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2).  Upon review of the record, I have determined that these matters can be resolved without further hearings.

## I.    BACKGROUND

### A.    Allegations in the Complaint and § 1983 Fact Statement

Plaintiff Dwayne Adam Racine is incarcerated at the TPCJC.  ECF No. 1, at 3.  During the October 12, 2020 return trip after a hurricane evacuation, Plaintiff was moved to the Catahoula Correctional Center, which is managed by LaSalle Management Company.  *Id.* at 5.  On the return trip to TPCJC while in a prison transport van convoy, several vans (including Plaintiff's) were

involved in a motor vehicle accident.  *Id.* at 5; *see also* ECF No. 17, at 3-4.  Plaintiff claims that the vans were traveling "at a high rate of speed" when the van in front of his struck the rear of a tractor trailer unit (i.e., 18- wheeler truck) that had stopped.  ECF No. 17, at 3.  The driver of his van, Officer Butler, swerved to avoid a collision and after coming to rest on the highway, Officer Butler's van was rear-ended by another transport van being driven by an officer whom Plaintiff alleges did not have a chauffeur's license.  *Id.* at 3-4; ECF No. 1, at 5.

Plaintiff was not treated for injuries at the scene nor sent to a hospital.  ECF No. 1, at 5; ECF No. 17, 3-4.  Rather, Plaintiff's injuries were recorded, and he was told that he would see medical staff upon arrival at the TPCJC.  ECF No. 1, at 5.  He acknowledges that he was seen by medical staff  after he arrived at TPCJC, but he was not sent to "a real hospital" for his injuries or seen by a "real doctor."  *Id.* at 5; ECF No. 17, at 4.

Plaintiff named LaSalle Management Company, Catahoula Correctional Center, Terrebonne Parish Criminal Justice Complex and the Terrebonne Parish Medical Staff as defendants.  ECF No. 1, at 1 & 4; ECF No. 17, at 1; ECF No. 21, at 5.  He seeks to recover for pain and suffering and compensation for medical expenses, medical malpractice for the improper handling and medical treatment at the accident scene and later at the TPCJC, and defamation of character due to how Defendants treated him.  ECF No. 1, at 5.

**B.  _Spears_ Hearing Testimony**

On January 14, 2021, I conducted a telephone conference in this matter.  Participating were plaintiff, *pro se*, Brian Marceaux (counsel for Terrebonne Parish Criminal Justice Complex and Terrebonne Parish Criminal Justice Complex Medical Staff), William Dodd (counsel for Terrebonne Sheriff's Office), and Stephen Gieger (counsel for Lasalle Management Company).  Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179

(5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. ECF No. 20. The conference was electronically recorded.

During the *Spears* hearing, Plaintiff elaborated on the allegations in his Complaint. He stated that, as part of a convoy, due to being housed on the medical unit due to a prior medical issue, he was being transported in a 5-person minivan (owned by LaSalle) with other medical unit inmates. Plaintiff testified that his driver Officer Butler was employed by LaSalle or Catahoula, and that LaSalle owns Catahoula. Plaintiff testified that he was not wearing a seat belt at the time of the accident, and when he asked why he was not seat-belted, the driver told him her job was to transport them.

While returning from Catahoula to TPCJC after a hurricane evacuation, his transport van was involved in a multi-vehicle accident. Plaintiff testified that he had been sleeping with his face leaning against the side of the van immediately before the accident. Despite being asleep, when asked to describe the accident, Plaintiff stated that the van drivers were following each other in and out of traffic and, while on Interstate 10 in Baton Rouge, the van in front of his hit an 18-wheeler, so his driver swerved to avoid hitting another vehicle. When his van came to a stop, the van traveling behind rear-ended it. The impact caused Plaintiff's face to slam into the iron screen in front of him, which he alleges resulted in the re-cracking of his jaw and exacerbation of his prior injury.[1]

After the accident, the driver asked about the other officer's condition before exiting the vehicle to come around the back at which time she asked the inmates, including Mr. Racine, if they were okay. Plaintiff said his face was bruised, but not bleeding. Ms. Butler wrote down the

---

[1] Before the October 12, 2020 vehicle accident, on or about May 26, 2020, Plaintiff had an altercation with another prisoner and sustained facial lacerations and zygomaticomaxillary complex fracture on the left side of his face. *See* ECF No. 24 (sealed medical records), at 18. Plaintiff had been treated for those injuries and was still being housed in a medical dorm at the time of the evacuation.

inmates' responses.  Plaintiff contends that  Ms. Butler said the driver of the van behind them did not have a chauffer's license.

When the medic arrived, Ms. Butler advised the medic that the passengers would obtain medical attention at TPCJC.  They waited at the scene of the accident for an hour before leaving for the TPCJC, and then waited another hour at the TPCJC before seeing the doctor.  Upon arrival at TPCJC, Nurse Lovell triaged the passengers and recorded their injuries.  Dr. Haydel then examined Plaintiff and allegedly told him that the x-ray machine at TPCJC was not good enough to detect any injuries.  Plaintiff testified that he received ibuprofen, and Dr. Haydel said they would set a date for Plaintiff to see "the right doctor."  Plaintiff testified that the TPCJC medical staff, however, failed to send him to a doctor, and he has never been sent to a to see about his injuries, claiming he has "not seen a doctor since the accident happened."  Later during his *Spears* hearing, however, Plaintiff testified that he saw Dr. Haydel twice since the accident and that he saw an orthopedist in New Orleans once since the accident, in November.[2]  Plaintiff complains that the follow-up care ordered by the New Orleans orthopedist has not yet occurred.  He has been told that it is scheduled, but he does not know when it is scheduled because security concerns preclude notifying inmates of appointment dates.  He claims that this delay has caused disfigurement.  He also testified that one of the nurses (Ms. Tina) refused to give him his migraine medication and ignored his request for medical treatment.

## C.  Plaintiff's Medical Records

By order dated December 9, 2020, this Court ordered the TPCJC to provide both the court and Plaintiff with a copy of his medical records.  ECF No. 10.  During the *Spears* conference, Plaintiff confirmed that he received the copy of his medical records.  ECF No. 24.

---

[2] Plaintiff argues, however, that those visits were for his pre-existing facial injuries, not the exacerbation of his injuries from the wreck.

4

Plaintiff's medical records reflect that he had experienced significant injuries and facial disfigurement from a May altercation, which was several months before the vehicle accident at issue.  Approximately two weeks before the accident, Plaintiff had completed a Request for Medical Attention and stated:  "my face muscles on the left side . . . hurts and it still hurts to eat and my ear is always ringing on the left side and my vision in my left eye goes in and out and I have severe headaches still."  *Id*. at 34; *see also id*. at 43 & 44 (September 11, 2020 Medical Note regarding headaches and pain to left side; September 4, 2020 Request for Medical Attention; examined September 8, 2020); *id.* at 46 (September 3, 2020 Medical Note).  Plaintiff went to University Medical Center on September 24, 2020, for follow-up care relating to his facial injury. *Id*. at 47, 55-56

The records reflect that, on the day of the accident (October 12, 2020), Plaintiff saw Dr. Haydel at TPCJC for the motor vehicle accident and complained of jaw/face.  *Id*. at 15.  Plaintiff's medical records reflect the following additional medical treatment since the accident:

- Medical Attention Request on October 13, 2020 complaining of urinary tract infection and also pain on the left side of his face and cracking and popping noise in his neck and back; seen by medical staff on October 14, 2020.  *Id*. at 29.

- Medical Attention Request on October 19, 2020; for left eye blurriness, ringing in ear and headache, problem urinating, and muscle spasms in left side of face and neck; seen by medical on October 22, 2020.  *Id*. at 26.

- Dental tooth extraction on October 21, 2020.  *Id*. at 27.

- Medical Attention Request on October 28, 2020 complaining that face, neck and back hurt since wreck and also problems urinating; seen on October 27, 2020 and given over the counter medications for pain.  *Id*. at 23.

- Medical Attention Request on November 14, 2020 complaining of face, neck and back pain and headaches; seen by medical on November 16, 2020 and instructed to take medications as prescribed and will refer to physician.  *Id.* at 19.

- Dr. Haydel on November 19, 2020 for "F/U MVA on 10/12/20 . . . ."  *Id.* at 13.

- Dr. Salameh (resident at University Medical Center in New Orleans) on November 24, 2020, which references CBCT imaging reflecting "chronic depressed L zygomatic arch factrue with malunion . . . ." *Id*. at 6. At that November 24 visit, Dr. Salameh recommended bilateral TMJ/MRI, which appears to have been requested. *Id*.

- Dr. Haydel on November 27, 2020. *Id*. at 14.

- Dr. Haydel on December 1, 2020. *Id*. at 5.

Thus, according to Plaintiff's medical records, he has had at least nine relevant medical interactions since the October 12, 2020 accident and further medical testing or consultations have been requested. *Id.* at 6.

### D.  **Defendants' Motion to Dismiss**

Defendants TPCJC and Terrebonne Parish Medical Staff have filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 22. In the motion, Defendants argue that Plaintiff has not exhausted TPCJC's grievance procedure (ECF No. 22-1, at 4-6), he fails to state a claim (*id.* at 6-8), and he has named entities (TPCJC and Terrebonne Parish Medical Staff) that are not capable of being sued (*id*. at 6).

## II.    **LEGAL STANDARDS**

### A.  **Statutorily Required Screening**

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[3] A prisoner's *in forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious.[4] A claim is frivolous if it "lacks an arguable basis in law or fact."[5] A claim lacks an arguable basis in law if it is "based

---

[3] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).
[4] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); 42 U.S.C. § 1997c(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the

on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[6]   A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . .   [or] rise to the level of the irrational or wholly incredible . . . ."[7]   A court may not dismiss a claim simply because the facts are "unlikely."[8]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[9]   In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably fall afoul" of the other.[10]   If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[11]   "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[12]

### B.  The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[13]   The purpose of a *Spears* hearing is to dig beneath the

---

unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[6] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[7] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

[8] *Id.*

[9] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[10] *Moore*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).

[11] *Id.*

[12] *Id.*

[13] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[14]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[15]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[16] These testimony from the Spears hearing will supersede the allegations of the plaintiff's complaint.[17]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[18]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely on documents as additional evidence if they are properly identified, authentic and reliable.[19]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[20]  Medical records of sick calls, examinations, diagnoses, and medications may, however, rebut allegations of deliberate indifference.[21]

**C.  Standards for Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted.  The Rule 12(b)(6) analysis

---

[14] *Id.*
[15] *Davis*, 157 F.3d at 1005–06.
[16] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[17] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[18] *Spears*, 766 F.2d at 182.
[19] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).
[20] *Id.*
[21] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

is generally confined to a review of the complaint and its proper attachments.[22]  The United States

Fifth Circuit Court of Appeals has summarized the Supreme Court's standards for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[23]

> "The  Supreme Court's decisions in *Iqbal* and *Twombly* . . . did not alter the long-standing

requirement that, when evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ]

all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[24]

Under these standards, "[f]actual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."[25]  Thus, "[w]ith respect to any well-pleaded allegations 'a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"[26]

For purposes of defendant's motions, the court accepts "all well-pleaded facts as true and view[s]

those facts in the light most favorable to the plaintiffs."[27]

---

[22] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).

[23] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[24] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)).

[25] *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).

[26] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664).

[27] *Id.* (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

III.   **LAW AND ANALYSIS**

A.  **Required Elements of § 1983 Claim**

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[28]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[29]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[30] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[31] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[32] In other words, a plaintiff must satisfy three elements to establish § 1983 liability:

> (1) deprivation of a right secured by the U.S. Constitution or federal law;
> (2) that occurred under color of state law; and
> (3) was caused by a state actor.[33]

---

[28] 42 U.S.C. § 1983.

[29] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).

[30] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[31] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[32] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

[33] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

In this case, Plaintiff's complaint, as expounded by his *Spears* testimony explaining the factual basis of his claims, should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1).[34]   His allegations fail to establish a cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.[35]

### B. The Named Defendants

Section 1983 imposes liability on any "person" who violates someone's constitutional rights under color of law.[36]  Plaintiff has named four defendants:  LaSalle Management Company, Catahoula Correctional Facility, TPCJC and  the Terrebonne Parish Medical Staff.

The Fifth Circuit has recognized that a private prison management company, like LaSalle Management, may be liable under § 1983.[37]   The other defendants, however, are not proper defendants.  An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits.[38]   To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person" as defined by the Louisiana Civil Code.  In Louisiana, a juridical person is "an entity to which the law attributes personality, such as a corporation or partnership."[39]

---

[34] The Prison Litigation Reform Act requires a plaintiff to exhaust administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (stating exhaustion of administrative remedies is now required for all actions brought with respect to prison conditions whether under § 1983 or other federal law); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (holding that an inmate must exhaust available administrative remedies even if administrative remedy does not provide requested relief).  Although it appears that Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) (ECF No. 1, Section II (A) & (B), at 3), that is an affirmative defense for which defendants bear the burden.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); The court may only "sua sponte, 'dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust.'"  *Hicks v. Garcia*, 372 F. App'x 557, 557–58 (5th Cir. 2010).

[35] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'"  *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[36] 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 65 (1989).

[37] *See, e.g., Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460-61 (5th Cir. 2003).

[38] Fed. R. Civ. P. 17(b).

[39] La. Civ. Code art. 24.

In Louisiana, the responsibility for parish jails is divided, with the parish responsible for the jail's physical maintenance (La. Rev. Stat. § 15:702), and the sheriff charged with the duty to administer and operate the jail (La. Rev. Stat. § 15:704). The office of sheriff is a constitutionally created office in Louisiana, existing separately from the parish government.[40] Thus, in Louisiana, jail facilities are not "legally empowered to do" anything independent of either parish officials or the parish sheriff.[41] Consequently, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[42] Likewise, Plaintiff's effort to pursue a claim against unidentified doctors, nurses, and other members of the TPCJC's medical staff by naming the "Terrebonne Medical Staff" as a defendant is improper. A § 1983 action must be filed against an actual identified person, not a department.[43]

In addition to lacking the capacity to be sued, as required by Fed. R. Civ. P. 17(b), prisons[44] and "medical staff"[45] are improper defendants in a § 1983 case because federal courts have

---

[40] La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff).

[41] *Cf. Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994).

[42] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (citations omitted).

[43] *See Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 3-06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007)); *Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3 n.8 (E.D. La. Feb. 2, 2006) ("Medical Staff" is not a juridical entity capable of being sued; the specific medical personnel must be named).

[44] *See Wetzel v. St. Tammany Par. Jail*, 610 F. Supp. 2d 545, 548 (E.D. La. 2009) (citing *Cullen v. DuPage Ct.y*, No. 99-1296, 1999 WL 1212570 at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester Cty. Corr. Facility Admin.*, No. 97-420, 1997 WL 659100 at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982)); *see also Douglas*, 567 F. Supp. 2d at 892 (citing *U.S. ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3d Cir. 1973)).

[45] *Christmas v. Avoyelles Corr. Ctr.*, No. 1:13-CV-02595, 2015 WL 4092779, at *5 n.5 (W.D. La. July 6, 2015) (stating "medical staff" is not a "person" within the meaning of § 1983); *Horton v. Bay St. Louis Police Dep't*, No. 108CV1505HSOJMR, 2009 WL 6476770, at *1 (S.D. Miss. Dec. 18, 2009), R.&R. adopted, No. 1:08CV1505HSO-JMR, 2010 WL 1991550 (S.D. Miss. May 17, 2010) (stating "Medical Staff" is not "person" subject to suit within the meaning of § 1983) (citing *Irvin v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D.Pa.1996) (holding that municipal departments are not "persons" under § 1983 since they are merely an arm of the local municipality); *PBA Local No.*

recognized that a jail or prison facility is not a "person" within the meaning of § 1983.  The prisons are buildings, not entities that can be sued.[46]  Accordingly, Plaintiff's claims against Catahoula, TPCJC and the Terrebonne Medical Staff must be dismissed.  The Court further notes that, for the reasons set forth in Section C *infra*, it is unnecessary to allow plaintiff an additional opportunity to amend the complaint to add proper defendants because it is evident that his underlying claims would be subject to dismissal even if proper defendants were named.

### C.  Negligence Is Insufficient to Establish a § 1983 Claim

The law is well-established that mere negligence does not amount to a denial of a constitutional right:[47]  "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."[48]  For that reason, in a number of contexts, courts have determined that allegations amounting to mere negligence cannot support a § 1983 claim.[49]  Rather, in a case like this, to establish a claim under § 1983, a plaintiff must show that the defendant was deliberately indifferent to his safety or serious medical needs under either the Eighth or Fourteenth Amendments.[50]

---

*38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825–26 (D.N.J.1993) (stating, by extensive string citation, that courts unanimously agree that a police department is not a proper defendant in a § 1983 action)).

[46] *See Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Par. Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, *3 (E.D. La. Aug, 10, 2015).

[47] *See Daniels v. Williams*, 474 U.S. 327, 329-30 (1986).

[48] *Daniels*, 474 U.S. at 328; *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

[49] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); *Hare v. City of Corinth*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (en banc) (negligence insufficient to support failure to protect claim under § 1983); *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support § 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir. 1992) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994).

[50] *Baugham v. Hickman*, 935  F.3d 302 (5th Cir. 2019).

The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.[51]  The proper analysis of each category of claims is the same, as our "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."[52]  A claim is further classified according to whether it concerns a "condition of confinement" or an "episodic act or omission."[53]  State prisoners must be subject to humane conditions of confinement, and the conditions "must not involve the wanton and unnecessary infliction of pain."[54]  An injury must be "objectively sufficiently serious," and the state official must have been deliberately indifferent to the prisoner's health and safety to state a claim.[55]  For episodic acts or omissions claims, the court employs different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue.[56]  Both standards require the plaintiff to establish that the official(s) acted with subjective deliberate indifference.[57]  Municipal as opposed to individual liability has the additional requirement that the "violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference."[58]

The en banc Fifth Circuit clarified the required mental state for subjective deliberate indifference: "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'"[59]  Thus,

---

[51] *See Hare,* 74 F.3d at 639.

[52] *Garza*, 922 F.3d at 634 (citing *Hare*, 74 F.3d at 643-44).

[53] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (citation omitted).

[54] *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  The "official conduct must be 'wanton,' which is defined to mean 'reckless.' " *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).

[55] *Palmer*, 193 F.3d at 352 (quoting *Farmer*, 511 U.S. at 834).

[56] *Id*. at 353.

[57] *Id*. (citation omitted).

[58] *Garza*, 922 F.3d at 634 (citation omitted).

[59] *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837); *see also Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

the official is liable when he ignores a danger to an inmate after he has been made fully aware of it.[60]  Subjective deliberate indifference "is an extremely high standard to meet."[61]

### 1.  The Van Ride

Plaintiff's complaint, as expounded by his *Spears* testimony, is that the defendants were deliberately indifferent to his safety by (a) allowing an improperly licensed officer to drive a van in the convoy (but not his van) because the officer allegedly lacked a chauffer's license and (b) transporting him without affixing his seatbelt.

The Fifth Circuit analyzes claims regarding constitutional violations during inmate transportation of a convicted prisoner under the Eighth Amendment.[62]  Again, the Fourteenth Amendment would apply to claims by a pretrial detainee, though the deliberate-indifference analysis would be the same under either amendment.[63]  Again, to the extent Plaintiff asserts a claim of negligence relating to the accident, claims arising from negligent acts do not give rise to relief under § 1983.  Rather, Plaintiff must establish that the defendants acted with deliberate indifference to his safety.

The Fifth Circuit and district courts within the circuit have repeatedly held that the mere failure to provide seatbelts to inmates during transport does not, without more, amount to deliberate indifference.[64]  Nor does the occurrence of an accident alone, without more, demonstrate

---

[60] *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989).

[61] *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[62] *Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013).

[63] *See Hare*, 74 F.3d at 647-48.

[64] *See, e.g., Baughman v. Hickman*, 935 F.3d 302, 307-08 (5th Cir. 2019) (granting summary judgment on § 1983 claim based on absence of seat belt and allegation that driver was speeding up and down on an expressway, because even if done rapidly, speeding up and down is not evidence of recklessness); *Anderson v. Stephens*, 609 F. App'x 217 (5th Cir. 2015) (affirming dismissal of § 1983 claim arising from traffic accident and alleging lack of seatbelt as frivolous and for failure to state a claim); *Crumbliss v. Darden*, 469 F. App'x 325 (5th Cir. 2012) (absence of tie-down straps for wheelchair in van insufficient to establish deliberate indifference); *Cooks v. Crain*, 327 F. App'x 493 (5th Cir. 2009) (rejecting prisoner's claim that being transported without seatbelt was so unsafe as to violate his constitutional rights); *Bell v. Norwood*, 325 F. App'x 306 (5th Cir. 2009) (rejecting § 1983 claim based on transport in vehicles without seatbelts); *see also Gray v. Wichita Cty. Sheriff's Dep't*, 19-78-M-BP, 2020 WL 8188198 (N.D. Tx. Dec. 22, 2020) (dismissing § 1983 suit by prisoner, who was not wearing a seatbelt, who was injured during

a subjective belief on the part of the defendants that the plaintiff was being placed at substantial risk of serious harm.[65]  When, however, a plaintiff goes beyond simply asserting the need for an extra measure of safety against the possibility of harm, and also asserts additional allegations that the defendant operated the transport vehicle recklessly, knowing of the danger to the prisoner due to the lack of seatbelts, the § 1983 claim will survive screening.[66]

With regard to Plaintiff's claim based on another driver's lack of a chauffer's license, Louisiana does not appear to require the driver of a seven-passenger prison transport van have a Class D Chauffer's license.[67]  Even if it did, Plaintiff makes no allegations that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed based on the licensure status of one driver and defendants actually drew that inference.

_____

transport when a car ran a red light and collided with the transport van); *Porter v. Willis*, 14-524-BAJ-EWD, 2016 WL 1032303, *3 (M.D. La. Feb. 16, 2016) (dismissing § 1983 claim by prisoner injured during transport to work site when officer made inappropriate turn and caused rear wheels of trailer to jolt into and out of a ditch, resulting in inmates being bounced around on the trailer); *Mercadel v. Corr. Corp. of Am.*, No. 09-CV-0079, 2009 WL 1658027, at *1 (W.D. La. June 12, 2009) (dismissing § 1983 suit by prisoner who fell off the back of a flatbed truck during transport to prison job where truck had no hand or guard rails).

[65] *Crumbliss*, 469 F. App'x at 327.

[66] *Rogers*, 709 F.3d at 408-09; *see also Miller v. Chapman*, No. 13-367-SDD-RLB, 2014 WL 2949287, *2 (M.D. La. June 30, 2014) ("While Fifth Circuit jurisprudence instructs that an inmate's allegations of being deprived of seatbelts while being transported in restraints alone will not give rise to a constitutional claim, when combined with allegations of reckless driving or a prior pattern of incidents, a viable claim may exist.") (footnotes and citations omitted).

[67] La. Rev. Stat. § 32:408(B)(2)(d) specifies that a Class D chauffeur's license "[p]ermits the operation of all vehicles included in Class "E" plus any single motor vehicle used in commerce to transport passengers or property if the motor vehicle has a gross vehicle weight rating of ten thousand one or more pounds but less than twenty-six thousand one pounds, or any combination of vehicles used in commerce to transport passengers or property if the motor vehicle has a combined gross vehicle weight rating of ten thousand one or more pounds but less than twenty-six thousand one pounds inclusive of a towed unit with a gross vehicle weight rating of more than ten thousand pounds; or any vehicle designed or utilized for the transportation of passengers for hire or fee; and not utilized in the transportation of materials found to be hazardous under the provisions of the Hazardous Materials Transportation Act which requires the vehicle to bear a placard under the provision of Hazardous Materials Regulations (49 CFR Part 172, Subpart F)." Subsection (e) specifies that a Class E personal vehicle license authorizes the driver to operate, in pertinent part, "any single motor vehicle under ten thousand one pounds gross vehicle weight rating . . . or any vehicle which is not within the definition of Group "A", "B", "C", or "D" and not utilized in the transportation of materials found to be hazardous under the provision of the Hazardous Materials Transportation Act which requires the vehicle to bear a placard under provisions of the Hazardous Materials Regulations (49 CFR Part 172, Subpart F)."  A  transport vehicle for sixteen or more passengers would appear to require a Class C Commercial Driver's License (*id.* § 32:408(B)(2)(c)),  but a seven-person transport vehicle such as that involved in this case would not appear to fall into that category.

Further, Plaintiff does not allege that *his driver* was driving recklessly or was not properly licensed, but even if he had, he fails to allege that his driver knew of prior injuries due to lack of seatbelts during transport, or any other facts to establish that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that defendants actually drew that inference. In fact, he alleges the driver of the van ahead of his driver collided with the back of an 18-wheeler, after which his driver swerved and avoided hitting those vehicles and only after it came to rest was it hit from behind by a third vehicle. At best, plaintiff asserts a state law tort or negligence claims, not a claim for civil rights violations cognizable under § 1983. Thus, plaintiff's negligence claim related to acts and/or omissions regarding the transport are legally frivolous argument and/or fail to state a claim for relief based upon violation of his constitutional rights under § 1983.[68]

## 2. <u>Inadequate Medical Care</u>

In *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996), the Fifth Circuit stated:[69]

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.[70]

The Fifth Circuit explained that for the "reasonable relationship" test under *Bell v. Wolfish,* 441 U.S. 520, 539 (1979), to apply, the inmate must be able to show that a prison official's act either

---

[68] 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

[69] Before *Hare*, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); *Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir. 1987); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1186 (5th Cir. 1990), *abrogated on other grounds as recognized in Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).

[70] *Hare*, 74 F.3d at 650.

"implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."[71]  If the plaintiff is unable to prove either, the incident is considered an episodic act or omission, subject to the deliberate indifference standard enunciated in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[72]

In *Estelle*, the Supreme Court held that a prisoner may succeed on a claim for damages under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.[73] Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . [or acts] repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.[74]  Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[75]  *Farmer*'s "deliberate indifference" definition[76] discussed in Section III(C) *supra* likewise applies to medical claims.[77]

Plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."[78]  In addition, plaintiff must establish that defendant possessed a culpable state of

---

[71] *Id.* at 645.
[72] *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Bell*, 441 U.S. at 539; *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997); *Hare*, 74 F.3d at 649); *Tamez v. Manthey*, 589 F.3d 764, 769–70 (5th Cir. 2009) (citing *Scott*, 114 F.3d at 53; *Hare*, 74 F.3d at 649 n.4).
[73] *Estelle*, 429 U.S. at 106.
[74] *Id.* at 105–06; *accord Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976); *Tamez*, 589 F.3d at 770; *Hare*, 74 F.3d at 650.
[75] *Estelle*, 429 U.S. at 104–05.
[76] *Farmer*, 511 U.S. at 847 (A prison official is liable "only if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it.").
[77] *Reeves*, 27 F.3d at 176.
[78] *Cooper v. Johnson*, 353 F. App'x 965, 967 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

mind.[79]  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[80]  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[81]

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].[82]

"'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."[83]

Plaintiff's pleadings, as expanded by his *Spears* testimony, establish that only episodic acts or omissions, as defined in *Hare,* are at issue.[84]  Thus, the "deliberate indifference" standard applies, and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.  Plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Plaintiff complains that he did not receive medical care at the scene of the accident.  ECF No. 1, at 5.  A serious medical need is one for which treatment has been recommended by a

---

[79] *Farmer*, 511 U.S. at 838 (citing *Wilson*, 501 U.S. at 297).
[80] *Id.* at 837; *accord Tamez*, 589 F.3d at 770 (citing *Thompson v. Upshur Cty.*, 245 F.3d 447, 458–59 (5th Cir. 2001)).
[81] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).
[82] *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting *Board of Ct.y Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); *accord Tamez*, 589 F.3d at 770.
[83] *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Farmer*, 511 U.S. at 838-40).
[84] *See Tamez*, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").

physician or for which the need is so apparent that even laymen would recognize that care is required.[85]  Plaintiff's stated injury would not have been easily identified as one requiring additional or immediate care.[86]  Further, he does not allege that medical personnel at the TPCJC refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard for any serious medical needs.[87]  Rather, assuming Plaintiff had articulated sufficient facts to establish a serious medical condition, the facts alleged in his Complaint and through his *Spears* testimony, confirmed by the medical records, negate any inference of deliberate indifference.

The medical records reflect that Plaintiff received medical attention on the day of the accident upon return to TPCJC, he received Ibuprofen for pain, he had several follow-up visits with Dr. Haydel and Dr. Salemah, and continued treatment by outside physicians has been requested.  ECF No. 24.  Although Plaintiff appears to complain about delay in care, over the last three and one-half months of medical records, Plaintiff has had at least nine interactions with medical personnel and received pain medications on numerous occasions.  *Id*.  Further, he does not show that he suffered "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.[88]

Given the substantial and ongoing medical care reflected in Plaintiff's medical records, his dissatisfaction with the timeliness, quality or effectiveness of medical care does not support a

---

[85] *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citation omitted).

[86] *Bell v. Hicks*, No. 12-1979, 2012 WL 3276728, *3 (S.D. Tex. Aug. 9, 2012) (rejecting deliberate indifference to serious health needs based on failure to administer emergency medical help at the scene of the accident where, upon return to prison, inmate was examined by nurse and doctor and given Ibuprofen); *see also Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir.1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need).

[87] *Brewster*, 587 F.3d at 770.

[88] *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 (2002) (citing *Monmouth Cty. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")).

finding of deliberate indifference to his serious medical needs as necessary to establish a constitutional violation cognizable under § 1983.[89]  Accordingly, his complaints about his medical care fail to state a claim of violation of his constitutional rights as necessary to obtain relief under § 1983 because he cannot establish deliberate indifference under the applicable constitutional standard.  Thus, plaintiff's claims about his medical care must be dismissed as frivolous and/or for failure to state a claim for relief.[90]

### D.  State Law Negligence Claim

To the extent Plaintiff seeks to assert a tort or negligence claim under state law, such a claim would involve purely state law questions that are best and ordinarily left to the state court to decide.  Because I recommend that Plaintiff's § 1983 claims be dismissed and no possible basis for federal subject matter jurisdiction is otherwise reflected from the face of this complaint, the court has discretion either to decline or exercise supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367(c)(3).  Considering the statutory provisions of § 1367(c) and balancing the relevant factors of judicial economy, convenience, fairness and comity and considering the early stage of this proceeding, this court should decline to exercise jurisdiction over any state law tort or negligence claims and dismiss them without prejudice.

### E.  Motions to Dismiss by Defendants TPCJC and Terrebonne Parish Medical Staff

In light of the Court's recommendation that Plaintiff's complaint be dismissed pursuant to its statutory frivolousness review, there are no claims remaining against Defendants TPCJC and

---

[89] "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered);
[90] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

Terrebonne Parish Medical Staff.  Accordingly, their motion to dismiss (ECF No. 22) should be dismissed as moot.

IV.    <u>**CONCLUSION**</u>

Dismissal of plaintiff's claim is proper on the grounds of frivolousness and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1). Dismissal without leave to amend is proper because there is no conceivable, non-frivolous federal claim plaintiff could assert against them consistent with the facts alleged in his complaint, as expanded by the information provided at the *Spears* hearing.

<u>**RECOMMENDATIONS**</u>

For the foregoing reasons, IT IS RECOMMENDED that Plaintiff's § 1983 claims be DISMISSED WITH PREJUDICE as legally frivolous and/or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(a)–(b), and/or 42 U.S.C. § 1997e(c)(1).

IT IS FURTHER RECOMMENDED that Plaintiffs' state law negligence claims be DISMISSED WITHOUT PREJUDICE because the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

IT IS FURTHER RECOMMENDED that the Motion to Dismiss (ECF No. 22) filed by Defendants Terrebonne Parish Criminal Justice Complex and Terrebonne Parish Medical Staff be DISMISSED AS MOOT.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[91]

New Orleans, Louisiana, this ___7th___ day of June, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[91]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).